IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CONCUR-TEXAS, L.P., a Utah limited partnership,<br><br>        Plaintiff,<br><br><br><br>                vs.<br><br><br>DURADRIL, LLC, a Texas Limited Liability Company, GREGORY A. WARD, a Texas citizen, PAMELA G. WARD, a Texas citizen, CITADEL MARINE CENTER, LLC F/K/A ALEUTIAN YACHTS, LLC, a Washington Limited Liability Company, RIGMINDER INC., a Texas Corporation, DYNOMAX DRILLING TOOLS, INC., an Alberta Canada Corporation, and DYNOMAX DRILLING TOOLS USA INC., a Texas Corporation,<br><br>        Defendants, | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:14-cv-00218-BCW<br><br>Judge Dee Benson |

This matter is before the court on defendants Dynomax Drilling Tools, Inc. and Dynomax Drilling USA, Inc.'s (collectively the "Dynomax defendants") motion to dismiss for lack of personal jurisdiction.  (Dkt. No. 16.)  The court has carefully considered the memoranda and other materials submitted by the parties as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND FACTS**

In reviewing the factual background of this case the court is mindful that "the allegations in the [plaintiff's] complaint must be taken as true to the extent they are uncontroverted by the defendants' affidavits." Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984). If there is conflicting evidence, the court is to "resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing that establishes jurisdiction." Far West Capital v. Towne, 46 F.3d 1071, 1075 (10th Cir. 1995). With these standards in mind, the court considers the facts and allegations in this case.

Plaintiff Concur-Texas, L.P. ("Concur"), is a Utah limited partnership with its principal place of business in Salt Lake City, Utah. Concur is a lease financing company. (Dkt. No. 22 at 4.) Defendant Dynomax Drilling Tools, Inc., ("Dynomax-Canada") is a Canadian corporation, with its principal place of business in Alberta, Canada. Dynomax-Canada is in the business of supplying drilling products engineered for the oil and gas industry. (Dkt. No. 16 at 3.) Defendant Dynomax Drilling USA, Inc. ("Dynomax-USA") is a Texas corporation with its principle place of business in Harris County, Texas. (Id. at 5.) Dynomax-USA is also in the business of supplying drilling products engineered for the oil and gas industry. (Id.)

On February 8, 2012, Concur entered into an agreement with Dynomax-Canada to purchase twenty-nine slide reamers (the "slide reamers" or "leased equipment") from Dynomax-Canada. (Dkt. No. 22 at 4.) As part of the agreement, the president of Dynomax-Canada executed a Vendor Certificate (the "Vendor Certificate") that stated, in part, that the "Vendor hereby irrevocable [sic] submits and consents to the exclusive jurisdiction of the state and federal courts located in the County of Salt Lake, State of Utah and waives any objection it may now or

hereafter have to venue or to convenience of forum." Id. at 5.

Concur subsequently leased all of the purchased slide reamers to Defendant Duradril, LLC. ("Duradril"). Id. The Master Lease (the "Lease") between Concur and Duradril contained a similar mandatory Utah venue provision as the Vendor Certificate. Id. The Lease also included the following provision:

### 24. ASSIGNMENT BY LESSEE

(a) NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY OR OTHERWISE, LESSEE MAY NOT ASSIGN, ENCUMBER, PLEDGE, TRANSFER, CONVEY, SELL, GRANT A SECURITY INTEREST IN, SUBLEASE OR DELEGATE THIS MASTER LEASE, ANY SCHEDULE OR OTHER LEASE DOCUMENT, OR ANY OF LESSEE'S RIGHTS OR OBLIGATIONS HEREUNDER OR THEREUNDER OR IN ANY OF THE LEASED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, SUCH CONSENT TO BE GIVEN OR WITHHELD IN LESSOR'S SOLE AND ABSOLUTE DISCRETION, FOR ANY REASON OR NO REASON. FURTHER, LESSEE'S RIGHTS AND OBLIGATIONS ARE NOT ASSIGNABLE BY CHANGE OF CONTROL, OPERATION OF LAW, INCLUDING WITHOUT LIMITATION BY MERGER, CONSOLIDATION, CONVERSION, REORGANIZATION, SHARE EXCHANGE, SALE OF ALL OR SUBSTANTIALLY ALL OF LESSEE'S ASSETS OR ANY SIMILAR TRANSACTION OR SERIES OF TRANSACTIONS. ANY SUCH ATTEMPTED ACTION SHALL BE VOID AB INITIO.

Pursuant to the Lease, Duradril made payments to Concur in 2012 and 2013. (Id.)

In the summer of 2013, Dynomax-Canada purchased Duradril's assets and Dynomax-USA subsequently took over the assets. Id. at 6. Concur alleges that the acquired assets included Duradril's rights to the leased equipment. Id. Dynomax-USA made two subsequent payments to Concur for the leased equipment (in November of 2013) and Concur alleges that Dynomax defendants used the slide reamers from at least July 2013 to November 2013. Id. at 7. Dynomax defendants have not made any payments pursuant to the lease since November 2013 and have

refused to return the slide reamers to Concur.  Id. at 8-9.

On March 24, 2014, Concur filed the current action, claiming that Dynomax defendants breached the Lease when they failed to make proper payments.  (Dkt. No. 2 ¶¶ 72-74.)  Concur further claims that Dynomax defendants have been unjustly enriched through their use and retention of the slide reamers. (Id. ¶¶ 75-79.)

Dynomax defendants responded by filing a Motion to Dismiss for Lack of Personal Jurisdiction on May 13, 2014.  Dynomax defendants assert that they are not subject to either general or specific jurisdiction in the forum state.  Concerning general jurisdiction, Dynomax defendants claim that they do not have substantial and continuous contacts with the forum state. (Dkt. No. 16 at 11-12.)  Concerning specific jurisdiction, they claim that they do not have "minimum contacts" with the forum state because the only contacts they had with the forum state "were a handful of e-mails, a few telephone calls and a couple of unauthorized wire transfers." (Id. at 15.)  As part of this claim, Dynomax defendants state that they were never parties to the Lease because no writing exists whereby Concur approved the assignment of the Lease from Duradril to either Dynomax-Canada or Dynomax-USA.  Finally, Dynomax defendants assert that exercising jurisdiction over them would "offend traditional notions of fair play and substantial justice." (Id.)

Plaintiff responded to Dynomax defendants' motion on June 25, 2014. (Dkt. No. 22.) In its memorandum, Plaintiff asserts that Dynomax defendants became parties to the Lease by buying Duradril's rights to the Lease, using the leased equipment, and making two payments pursuant to the Lease.  (Id. at 5-11.)  Consequently, Plaintiff further asserts that Dynomax

4

defendants have sufficient contacts with the forum state because their refusal to pay for or return the equipment constituted an intentional action expressly aimed at the forum state and because Dynomax defendants knew that the brunt of the injury would be felt in the forum state.  (Id. at 11.)  Plaintiff also claims that the court's exercise of jurisdiction over Dynomax defendants would not violate traditional notions of fair play and substantial justice.

Defendants did not file a reply memorandum and Plaintiff filed a request to submit the motion for decision on July 30, 2014.

## DISCUSSION

When, as in this case, the court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1091 (10th Cir. 1998).  The plaintiff may make this prima facie showing by demonstrating by affidavit or other written materials, facts that if true would support jurisdiction over the defendant.  Id.  In order to defeat the plaintiff's prima facie showing of personal jurisdiction, the moving defendant must present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable."  OMI Holdings, 149 F.3d at 1091 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show (1) that jurisdiction is legitimate under the laws of the forum state, and (2) that the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment.  Soma Medical Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1295 (10th Cir.

1999).

## I. Jurisdiction Under State Law

The Utah legislature has expressly stated that the long arm statute must be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code § 78B-3-201; see also Starways, Inc. v. Curry, 980 F.2d 204, 206 (Utah 1999) ("We have held that the Utah long-arm statute 'must be extended to the fullest extent allowed by due process of law.'") (quoting Synergetics v. Marathon Ranching Co., 701 F.2d 1106, 1110 (Utah 1985)). The Utah Supreme Court has stated that it "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." SII MegaDiamond, Inc. v. American Superabrasives Corp., 969 P.2d 430, 433 (Utah 1998). Therefore, following the direction of the Utah Supreme Court, and because the Utah long-arm statute confers the maximum jurisdiction permissible consistent with the Due Process Clause, the court proceeds to determine whether the exercise of personal jurisdiction over the Dynomax defendants meets federal due process standards.

## II. Due Process Analysis

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)); see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1090 (10th Cir. 1998). Accordingly, a "court may exercise

6

personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (quoting International Shoe, 326 U.S. at 316). The minimum contacts standard can be met in two ways. First, a court may assert *specific* personal jurisdiction over a nonresident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or are related to those activities." Burger King, 471 U.S. at 472. Where no nexus exists between the forum-related activity and the injury sustained, the court may nevertheless exercise *general* jurisdiction over the defendant when the defendant's contacts are "so pervasive that personal jurisdiction is conferred by the 'continuous and systematic' nature of the defendant's in-state activities." OMI Holdings, 149 F.3d at 1090-91.

### A. Specific Jurisdiction

The court's specific jurisdiction inquiry is two-fold. First, the court must determine whether the defendant has such "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there. World-Wide Volkswagen, 444 U.S. at 297. These "minimum contacts" are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" OMI Holdings, 149 F.3d at 1091 (quoting Burger King, 471 U.S. at 472.) Second, if the defendant's activities create sufficient minimum contacts, then the court must consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice." Id. (quoting Asahi Metal Indus. Co. v.

7

Superior Court of California, 480 U.S. 102, 113 (1987)).  This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case.  OMI Holdings, 149 F.3d at 1091.

The United States Court of Appeals for the Tenth Circuit has explained that "an interplay exists between the two components, such that 'depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.'" Id. at 1091-92 (quoting Met Life 84 F.3d at 568 or Int Shoe, 326 U.S. 310, 316.))

### 1. Minimum Contacts

"[T]he Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting Burger King, 471 U.S. at 472.)  The United States Court of Appeals for the Tenth Circuit has explained, however, that the "purposeful direction" requirement can appear in "different guises." Id.  In contract cases, "we sometimes ask whether the defendant 'purposefully availed' itself" of the privilege of conducting business in the forum state; in the tort context, meanwhile, "we often ask whether the non resident defendant 'purposefully directed' its activities at the forum state." Id. (citing Bell Helicopter Textron, Inc. V. Hekiqwest Int'l, Ltd., 385 F.3d 1291, 1296 (10th Cir. 2004).  Under either approach, the "shared aim of purposeful

8

direction" is to "ensure that an out-of-state defendant is not bound to appear to account for

merely 'random, fortuitous, or attenuated contacts' with the forum state." Id. (quoting Burger

King, 471 U.S. at 475.)

In this case, Concur attempts to satisfy the "purposeful direction" requirement by

applying the "effects test" set forth by the United States Supreme Court in Calder v. Jones, 465

U.S. 783, 789-90 (1984), and more recently applied by the Tenth Circuit in Dudnikov v. Chalk &

Vermilion Fine Arts, Inc., 514 F.3d 1063 (2008).

In setting forth the requirements a plaintiff must allege to show "purposeful direction,"

the Tenth Circuit stated: "Distilling Calder to its essence we thus understand the Court to have

found purposeful direction there because of the presence of (a) an intentional action . . . that was

(b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would

be felt in the forum state." Id.   Pursuant to the Calder effects test, as set forth in Dudnikov, this

court finds that Concur has sufficiently alleged "purposeful direction," and the Dynomax

defendants have the requisite minimum contacts with Utah.

First, the Dynomax defendants are alleged to have committed an intentional wrongful

act–breaching the Lease and retaining equipment that belongs to Concur.  In that regard, Concur

has sufficiently alleged that the Dynomax defendants acquired the duty to make payments under

the Lease and that they breached the Lease by failing to make those payments.[1]  (Dkt. No. 2 ¶ 72-

---

[1]Although Concur does not contend that they approved the assignment of the Lease in
writing, Plaintiff does not seem to seek enforcement of that provision, which was clearly directed
at Duradril, against the Dynomax defendants.  Moreover, Plaintiff alleges several actions taken
by Dynomax defendants that seem to indicate that they had become parties to the Lease.  While
Dynomax defendants may be able to demonstrate at trial that they never became parties to the

73.)  Concur has also alleged that the Dynomax defendants has retained possession of the equipment despite knowing that Concur is its rightful owner.  These allegations are sufficient to allege an intentional wrongful act.[2]

Second, the court finds that the Dynomax defendants' conduct was expressly aimed at the forum state.  The Dudnikov court explained that the "express aiming" test focuses on a defendant's intentions–what was the "focal point of [the defendant's] purposive efforts."  Id. at 1075.  In this case, the focal point of the Dynomax defendants' actions was breaching the Lease by withholding money and property from Concur.  Having sold the slide reamers to Concur, the Dynomax defendants knew that Concur, a Utah corporation with its principal place of business in Utah, was the owner of the slide reamers.  Additionally, the Dynomax defendants knew that both the original Vendor Certificate and the Lease Agreement contained a mandatory Utah venue provision.  With this knowledge, Dynomax acquired Duradril's rights to the Lease, used the leased equipment, and made two payments to Concur for the leased equipment.[3] (Dkt. No. 22 at 11.)  Dynomax defendants subsequently ceased making lease payments for the equipment but nevertheless maintained possession of it.  Consequently, it appears that the "express aim" of the

---

Lease, Concur's allegations to the contrary are sufficient to satisfy the relaxed standards for establishing personal jurisdiction at this juncture.

[2]In Dudnikov, the parties disputed whether *any* intentional act, wrongful or not, would suffice under Calder.  See Dudnikov, 514 F.3d at 1073.  The Tenth Circuit was able to "avoid entering this thicket," however, because it found that "even if Calder can be properly read as requiring some form of 'wrongful' intentional conduct, . . . [plaintiff's] complaint complies."  Id. The same is true in this case.

[3]Although Dynomax claims that the two payments were unauthorized and submitted by mistake, the payments were made.

Dynomax defendants' conduct was to effectively reach into Utah and unlawfully take Concur's property for its own use.

Finally, there is no meaningful dispute that the brunt of plaintiff's injury was suffered in the forum state. Dudnikov, 514 F.3d at 1077. For reasons previously discussed, Concur has satisfied its burden of establishing, at this stage, that the Dynomax defendants knew that Concur's business was based in Utah and, therefore, knew that the effects of the breach would be felt in Utah.

Having determined that the Dynomax defendants "purposefully directed" their activities at the forum state, the court has no difficulty concluding that Concur's injuries "arise out of " the Dynomax defendants' contacts with the forum jurisdiction. See Burger King, 471 U.S. at 472. Therefore, the Dynomax defendants have minimum contacts with Utah.

### 2. Reasonableness

Having determined that Concur has met its burden of establishing "minimum contacts," the court must still inquire whether the existence of personal jurisdiction would "offend traditional notions of fair play and substantial justice." Dudnikov, 514 F.3d at 1080 (quoting International Shoe, 326 U.S. at 316). This inquiry requires a determination of whether a district court's exercise of personal jurisdiction is "reasonable" in light of the circumstances surrounding the case. OMI Holdings, 149 F.3d at 1091. In this regard, the court should consider: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several

11

states in furthering fundamental substantive social policies. Id. at 1095; World-Wide

Volkswagen, 444 U.S. at 292.

The analyses of minimum contacts and reasonableness are complimentary, such that the

reasonableness prong of the due process inquiry evokes a sliding scale:

> the weaker the plaintiff's showing on [minimum contacts], the less a defendant need
> show in terms of unreasonableness to defeat jurisdiction.  The reverse is equally true: an
> especially strong showing of reasonableness may serve to fortify a borderline showing of
> [minimum contacts].

Pro Axess, Inc. v. Orlux Distribution, Inc. , 428 F.3d 1270, 1280 (10th Cir. 2005) (quoting OMI at

1092 (alterations in original) (quotations omitted)).  However, in a case such as this, where the

court has found that the defendants "purposefully ... directed [their] activities" at Utah, the

defendants "must present a compelling case that the presence of some other considerations would

render jurisdiction unreasonable." Burger King, 471 U.S. at 477.  The Dynomax defendants are

unable to meet this high standard.

### a. Burden on Defendant of Litigating in the Forum

With respect to the first factor–the burden on defendants– Dynomax defendants have

failed to sufficiently support their allegation that litigating in Utah would impose an unreasonable

burden on them.  Modern transportation and communication, and in particular the

implementation of electronic case filing, noticing and teleconferences, have to some extent

lessened the burden to out-of-state defendants. Toytrackerz v. Koehler, Slip Copy, 2009 WL

1505705 (D. Kan.). This is especially true with a company that has "worldwide reach," as

Dynomax claims to have. (See Dkt. No. 22 at 13.) While "inconvenience may at some point

become so substantial as to achieve constitutional magnitude, this is not such a case." Burger

King, 471 U.S. at 484 (internal citation omitted)

### b. Forum State's Interest in Adjudicating the Dispute

With respect to the second factor, the court considers the interest of Utah in resolving the dispute. States have "an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." OMI Holdings, 149 F.3d at 1096. In this case, the court finds that Utah has a strong interest in adjudicating this controversy. Concur not only resides in Utah, but has also potentially suffered significant injury and monetary damages within the state. See Burger King, 471 U.S. at 483-84.

### c. Plaintiff's Interest in Convenient and Effective Relief

This factor hinges on whether the plaintiff may receive convenient and effective relief in another forum. In this case, requiring Concur to litigate its dispute with the Dynomax defendants in another forum will have the effect of requiring Concur to litigate the same claims, based on the same allegations, twice–once in Utah against Duradril pursuant to the Lease, and then a second time against the Dynomax defendants in another state. Requiring Concur to pursue this course of action, with the potential for inconsistent outcomes, is anything but convenient and is potentially ineffective.

### d. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor asks whether the forum state is the most efficient place to litigate the dispute. Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d 1270, 1281 (10th Cir. 2005). In evaluating this factor, courts look to the location of witnesses, the location of the underlying wrong, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent

piecemeal litigation.  Id.

Although it has yet to be determined what law applies to Concur's claims against the Dynomax defendants, Utah law unquestionably applies to the court's interpretation of the Lease. Finally, given the forum selection clause in the Lease, jurisdiction in Utah would prevent piecemeal litigation as Utah is the only forum in which the claims against all of the parties can be heard.  In sum, the court finds that the interstate judicial system's interest is best served by litigating the dispute in Utah.

### e. States' Interest in Furthering Fundamental Substantive Social Policies

The fifth factor of the reasonableness inquiry focuses on whether the exercise of personal jurisdiction by the forum state affects the "substantive social policy interests of other states or foreign nations." Asahi, 480 U.S. at 115; OMI Holdings, 149 F.3d at 1097.  The court finds no facts suggesting that the exercise of personal jurisdiction in Utah would affect the substantive social policy interests of any other state or foreign nation.

After evaluating the relevant factors, the court finds that the Dynomax defendants have failed to establish a "compelling case" that the exercise of jurisdiction would be unreasonable. Burger King, 471 U.S. at 477.  Accordingly, the court concludes that exercising personal jurisdiction over the Dynomax defendants would not offend traditional notions of fair play and substantial justice.

### CONCLUSION

Having determined that the Dynomax defendants have sufficient minimum contacts with this forum, and having further determined that the exercise of jurisdiction does not offend

14

traditional notions of fair play and substantial justice, the court concludes that the Dynomax defendants are subject to personal jurisdiction in this court.[4]  Accordingly, the court DENIES the Dynomax defendants' motion to dismiss.

DATED this ___4___ day of November, 2014.

_____
Dee Benson
United States District Judge

---

[4]Having determined that the Dynomax defendants are subject to specific personal jurisdiction in Utah, the court declines to address the issue of general jurisdiction.