IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONCUR-TEXAS, LP,<br><br>                    Plaintiff/Relator,<br><br>v.<br><br>DURADRIL, LLC, GREGORY WARD, PAMELA G. WARD, CITADEL MARINE CENTER, LLC f/k/a ALEUTIAN YACHTS, LLC, RIGMINDER INC., DYNOMAX DRILLING TOOLS, INC., and DYNOMAX DRILLING TOOLS USA, INC.,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:14-cv-00218-DB<br><br>District Judge Dee Benson |

Before the Court are two motions: Defendants Dynomax Drilling Tools, Inc.'s and Dynomax Drilling Tools USA, Inc.'s (collectively "Dynomax") Motion for Summary Judgment (Dkt. No. 51) and Plaintiff Concur-Texas LP's ("Concur") Motion for Summary Judgment as to Dynomax (Dkt. No. 52).[1]  The Court held a hearing on the motions on April 15, 2016.  At the hearing, Concur was represented by Richard Ensor and Michael Barnhill.  Dynomax was represented by Isaac Villarreal, John P. Harrington, and Megan Depaulis.  At the conclusion of the hearing, the Court took the motions under advisement.  After consideration of the memoranda submitted by the parties, the relevant law, and the oral argument presented by counsel, the Court renders the following Memorandum Decision and Order.

## BACKGROUND

The issue in this case surrounds a lease agreement between Concur and Duradril, LLC ("Duradril") and a subsequent oral asset purchase agreement between Duradril and Dynomax.

---

[1] Concur filed and subsequently withdrew a Motion for Summary Judgment as to Defendants Gregory A. Ward, Pamela G. Ward, Citadel Marine Center, LLC f/k/a Aleutian Yachts, LLC, and Rigminder, Inc.  (*See* Dkt. Nos. 50, 69.)

On February 8, 2012, Concur entered into a Master Lease Agreement ("Master Lease") with Duradril.  (Turley Dec. at ¶ 5.)  The Master Lease and subsequent schedules provided that Concur would lease specialized drilling equipment called "slide reamers" to Duradril.  (*Id.* at ¶¶ 5–6.)  To secure the Master Lease, Defendants Gregory A. Ward, Pamela G. Ward, Citadel Marine Center, LLC f/k/a Aleutian Yachts, LLC, and Rigminder, Inc. executed guarantee agreements.  The guarantee agreements stated:

> Grantor herby unconditionally guarantees (and if more than one Guarantor, joint and severally guarantees) the full complete and prompt performance and observance of all Lessee's obligations under the Lease, including without limitation the payment of rents and all other amount under each Lease, as well as the payment of all amounts required or provided for under each Lease resulting from Lessee's breach or nonperformance thereof . . . .

(Dkt. No. 50, Ex. 3, p. 1.)  Additionally, the Master Lease contains a transfer restriction provision, which states:

> (a) NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY OR OTHERWISE, LESSEE [Duradril] MAY NOT ASSIGN, ENCUMBER, PLEDGE, TRANSFER, CONVEY, SELL, GRANT, A SECURITY INTEREST IN, SUBLEASE, OR DELEGATE THE MASTER LEASE, ANY SCHEDULE OR OTHER LEASE DOCUMENTS, OR ANY OF LESSEE'S RIGHTS OR OBLIGATIONS HEREUNDER OR THEREUNDER OR IN ANY OF THE LEASED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR [Concur], SUCH CONSENT TO BE GIVEN OR WITHHELD IN LESSOR'S SOLE AND ABSOLUTE DISCRETION, FOR ANY REASON OR NO REASON. FURTHER LESSEE'S RIGHT AND OBLIGATIONS ARE NOT ASSIGNABLE BY CHANGE OF CONTROL, OPERATION OF LAW, INCLUDING WITHOUT LIMITATION BY MERGER, CONSOLIDATION, CONVERSION, REORGANIZATION, SHARE EXCHANGE, SALE OF ALL OR SUBSTANTIALLY ALL OF LESSEE'S ASSETS OR ANY SIMILAR TRANSACTION OR SERIES OF TRANSACTIONS. ANY SUCH ATTEMPTED ACTION SHALL BE VOID AB INITIO

(Turley Dec. at Ex. 1, ¶ 24.)  Duradril made the required Master Lease payments until October of 2013.  (Dkt. No. 59, p. 4, ¶5.)

In July 2013, Dynomax entered into an oral asset purchase agreement ("APA") with Greg Ward and Duradril.  (Livingstone Dec. at ¶ 4.)  Dynomax claims that the terms of the APA allowed Dynomax to acquire Duradril's assets free and clear of all encumbrances.  (Dkt. No. 65, p. v, ¶ 7.)  Conversely, Greg Ward testified that the terms of the APA required Dynomax to satisfy Duradril's obligations to Concur.  (*See* Ward Dep. at 30:15–20.)

In November 2013, Dynomax sued Duradril and Greg Ward in Texas state court to determine the enforceability of the APA.  (Dkt. No. 44, ¶ 42; Dkt. No. 45, ¶ 42.)  On December 18, 2013, the Texas court entered a preliminary injunction, which stated:

> Plaintiffs, their agents, employees, representatives, servants, attorneys, and those persons in active concert or participation with them are ordered to refrain from transferring, conveying, pledging, encumbering or selling the Assets except in the ordinary course of business.  Nothing in this order prevents Plaintiffs from moving the Assets to a new business location.  The Court retains jurisdiction over the Assets . . . Further, the Court directs the parties to meet at the Location in a good faith attempt to work through any issues relating to ownership of the Assets, or other property at the Location.

(Dkt. No. 58, Ex. B.)  On November 20, 2014, after a jury trial, a judgment was entered in favor of Dynomax against Duradril and Greg Ward for breach of the APA.  (Turley Dep. at Ex. 3.)  Specifically, the Texas court final judgment stated:

> Duradril, LLC, and Greg Ward, agreed to the terms of an asset purchase agreement that became effective July 1, 2013; Duradril, LLC and Greg Ward failed to comply with the July 1, 2013 asset purchase agreement; Neither Duradril, LLC's nor Greg Ward's failure was excused; Duradril, LLC or Greg Ward ratified the July 1, 2013 asset purchase agreement that became effective on July 1, 2013; The July 1, 2013 asset purchase agreement is valid, enforceable and binding on Dynomax Drilling Tools, Inc., Dynomax Drilling Tools USA, Inc., Duradril, LLC and Greg Ward . . . .

(*Id.*)  Furthermore, the Texas jury concluded Duradril and Greg Ward were jointly and severally liable to Dynomax for $1,004,000 in damages.  (*Id.*)

During the Texas litigation, Concur asked Dynomax to either (1) assume Duradril's responsibilities under the Master Lease or (2) arrange for the collection of Concur's slide

reamers. On January 8, 2014, Concur's President Trey Turley ("Turley") sent an email to

Dynomax's CEO Dean Livingstone ("Livingstone"), stating:

> You are currently in position [sic] of the lease equipment. In order for you to remain in legal possession of the leased assets one of the following will need to take place immediately to advert legal action:
> - Pay the remaining obligations for the lease(s) [see below]
> - Assume the lease(s) by remitting the current obligations and continue to make regular lease payments [see below]
> - Arrange for the collection of the assets by Concur.

(Livingstone Dep. at Ex. 10.) Additionally, on May 19, 2014, Concur's counsel sent a letter to

Dynomax requesting that Dynomax return Concur's slide reamers immediately. (Turley Dec. at

Ex. 3.)

 In November 2013, Dynomax made one payment to Concur for the leased equipment in

the mount of $6,881.81. (Turley Dec. at ¶ 7.) Dynomax contends that the lease payment was

made by Jana Foley ("Foley"), a former Duradril employee, who was not authorized to make the

payment on behalf of Dynomax. (Dkt. No. 65, p. xvi, ¶ 6.). Foley testified at the Texas trial that

she was not authorized to use Dynomax accounts to fund the Concur-Duradril Master Lease.

(Dkt. No. 58, Ex. A, 115:1–9.) Aside from Foley's unauthorized payment, Dynomax did not

make the scheduled lease payments under the Master Lease after acquiring Duradril's assets.

(Dkt. No. 58, p. 5–6; Dkt. No. 65, p. xvi, ¶ 6.) Furthermore, Dynomax did not offer to make

Concur's slide reamers available to Concur until the conclusion of the Texas litigation. (Dkt.

No. 52, Ex. C, Letter from John P. Harrington to Richard F. Ensor, Dec. 5, 2014.) During May

and June of 2015, Concur repossessed its slide reamers from Dynomax. (Dkt. No. 65, p. xvi–v, ¶

19.)

 The parties dispute whether Dynomax used Concur's slide reamers during 2013 and

2014. Dynomax contends:

On four limited occasions, certain slide reamers claimed by Concur were rented out by Dynomax. The slide reamers were part of Dynomax's inventory and were either unknowingly utilized by Dynomax to satisfy their customers' requests or were already out on the oil field when the July 1, 2013 oral asset purchase agreement went into effect. The gross amount of the rentals from the time that Concur claims "unlawful" possession began (December 2013) was $ 4,342.50. The president of Dynomax testified that Dynomax's profit was between 25% and 40%, which would amount to $1,085.625 to $1,737.00. As soon as it was clear that Duradril had failed to transfer unencumbered assets, Dynomax began taking an inventory of the slide reamers at issue, taking those slide reamers out of its inventory rotation and storing them separately until the Texas Litigation had concluded.

(Dkt. No. 65, p. iii.)  Concur alleges that Dynomax's interrogatory responses and Dynomax's invoices show that Dynomax rented Concur's slide reamers to various drilling sites throughout 2013 and 2014.  (Dkt. No. 65, p. xx, ¶ 15; Dkt. No. 52, p. 5, ¶ 10.)  Concur argues that Dynomax generated "$101,922.00 in rental revenue from the slide reamers and an additional $476,595.00 in additional revenue related to these rentals."  (Dkt. No. 59, Ex. G.)

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In evaluating a motion for summary judgment, the Court reviews the facts in a light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor.  *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

 "In considering the parties' competing motions for summary judgment, the [C]ourt treats each motion separately, drawing all reasonable inferences against the party whose motion is

under consideration." *Morden v. XL Specialty Ins.*, No. 2:14-CV-00224, 2016 WL 1337252, at

*3 (D. Utah Apr. 5, 2016) (citing *Mascon v. United Parcel Serv. Inc.*, 743 F.3d 708, 712 (10th

Cir. 2014)).  Moreover, resolution by summary judgment is improper on cross motions for

summary judgment where disputes of material fact remain.  *James Barlow Family Ltd. P'ship v.*

*David M. Munson*, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997).

## DISCUSSION

The issue in this case is whether Dynomax is liable to Concur for retaining Concur's

equipment from July 2013 to June 2015.  Concur alleges that Dynomax is liable to Concur under

three theories: (1) breach of contract; (2) unjust enrichment; and (3) conversion.  Dynomax

argues it is entitled to Summary Judgment on Concur's breach of contract, conversion, and

unjust enrichment claims.  (Dkt. No. 51, p. ii.)  Similarly, Concur contends that it is entitled to

Summary Judgment on its conversion and unjust enrichment claims against Dynomax.  (Dkt. No.

52, p. 1.)[2]  The Court will first address Dynomax's Motion for Summary Judgment as to

Concur's breach of contact claim.  Next, the Court will address the parties' Cross Motions for

Summary Judgment as to Concur's unjust enrichment and conversion claims.

### A. Breach of Contract Claim

Concur alleges that Dynomax contractually assumed Duradril's obligations under the

Master Lease.  (Dkt. No. 59, p. 21–22.)  Concur argues Turley's January 8, 2014, email

constituted an offer and Dynomax's silence, coupled with Dynomax's continued use of Concur's

slide reamers throughout 2013 and 2014, established Dynomax's acceptance.  (*Id.*)

---

[2] Concur's Motion for Summary Judgment as to Dynomax states: "Concur moves for summary judgment on its unjust enrichment claim and in the alternative to its breach of contract claim."  (Dkt. No. 52, P. 3, n.1.)  However, Concur did not brief its breach of contract claim to inform the Court why it is entitled to relief.  Therefore, the Court will not consider Concur's motion in the alternative.  *See* Fed. R. Civ. P. 56(c) (outlining the moving party's burden on a motion for summary judgment); DUCiv R 56-1(b).

Furthermore, Concur alleges Dynomax breached its contract with Concur by failing to make regularly scheduled Master Lease payments during 2013 and 2014.[3] Dynomax counters that there is no evidence that Dynomax clearly and unequivocally assumed Duradril's obligations under the Master Lease and, therefore, no contract between the parties. (Dkt. No. 65, p. 6.)

"'The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.'" *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (quoting *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388).[4] An enforceable contract requires an offer and acceptance supported by consideration. *See Cea v. Hoffman*, 2012 UT App 101, ¶ 24, 276 P.3d 1178. The party asserting a contract has formed "has the burden of showing that an offer and acceptance were more probable than not." *Sackler v. Savin*, 897 P.2d 1217, 1222 (Utah 1995). Additionally, "[w]hether a contract exists between parties is ordinarily a question of law . . ." *Cea*, 2012 UT App 101, ¶ 27. However, a motion for summary judgment cannot be granted if there are factual disputes as to what the parties intended. *Republic Bank, Inc. v. W. Penn Allegheny Health Sys., Inc.*, No. 2:08CV934 DAK, 2010 WL 697361, at *3 (D. Utah Feb. 24, 2010); *see also Cea*, 2012 UT App 101, ¶ 24 ("A motion for summary judgment may not be granted if . . . there is a factual issue as to what the parties intended" (internal quotation marks and citations omitted)).

---

[3] Additionally, Concur argues that an implied in fact contract formed between Concur and Dynomax. However, Concur's Amended Complaint does not allege a theory of implied in fact contract. (*See* Dkt. No. 44.) Further, an implied in fact contract is an equitable remedy. *See E&M Sales W., Inc. v. Diversified Metal Products, Inc.*, 2009 UT App 299, ¶ 8, 221 P.3d 838 (finding that a "contract implied-in-fact . . . is only available if a party has first exhausted its legal remedies" (citations omitted)). Therefore, Concur's implied in fact contract theory is not properly before the Court and cannot support Concur's theory that Dynomax breached its alleged contract with Concur.

[4] The Master Lease contains a choice of law provision providing that Utah law governs the Master Lease. (Dkt. No. 52, Ex. 1, ¶ 20.) Additionally, the parties appear to agree that Utah law governs this dispute.

Whether Dynomax is entitled to summary judgment on Concur's breach of contract claim depends on whether there was an unambiguous offer by Concur, which was accepted by Dynomax.  "An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it.'" *Id.* at ¶ 24 (quoting *Engineering Assocs. v. Irving Place Assocs.*, 622 P.2d 784, 787 (Utah 1980)).  For an offer to create a binding contract "its terms must be definite and unambiguous." *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 12, 34 P.3d 785 (citations omitted).  Similarly, "'acceptance is a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made.'" *Cea*, 2012 UT App 101, ¶ 24 (quoting *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995)).

A party's silence may operate as acceptance in certain circumstances.  *See Ewell & Son, Inc. v. Salt Lake City Corp.*, 493 P.2d 1283, 1286 (Utah 1972) (finding that the defendant's silence under the circumstances constituted acceptance of the plaintiff's offer).  For example, silence may operate as acceptance where "an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation."  Restatement (Second) of Contracts § 69(a) (1981).  Furthermore, "[t]he conduct of both parties may . . . be considered in determining whether they entered into an agreement."  *McKelvey v. Hamilton*, 2009 UT App 126, ¶ 28, 211 P.3d 390.

Turley's January 8, 2014, email to Livingstone is evidence of an unambiguous offer. Turley's email outlined three options for Dynomax to avoid legal recourse from Concur. Dynomax could (1) pay Duradril's remaining obligations under the Master Lease; (2) assume

Duradril's obligations under the Master Lease; or (3) arrange for the collection of the slide

reamers by Concur.  (*See* Livingstone Dep. at Ex. 10.)

Additionally, there is evidence that Dynomax accepted Concur's offer.  Dynomax

retained the slide reamers with "reason to know that they were offered with the expectation of

compensation."  *See* Restatement (Second) of Contracts, § 69(a) (1981).  Furthermore, as

discussed below, there is evidence before the Court that Dynomax continued to use Concur's

slide reamers throughout 2013 and 2014.  *See infra* Part B.  Dynomax's actions and inaction

could be interpreted as intent to assume Duradril's obligations under the Master Lease.

Therefore, Dynomax's Motion for Summary Judgment as to Concur's breach of contract claim is

denied.

**B. Unjust Enrichment**

Concur and Dynomax believe they are each entitled to summary judgment on Concur's

unjust enrichment claim.  Concur argues that there is no dispute that Dynomax retained and

benefited from Concur's equipment throughout 2013 and 2014 without compensating Concur.

(Dkt. No. 52, p. 11.)  Conversely, Dynomax believes it is entitled to summary judgment on

Concur's unjust enrichment claim primarily because Concur's slide reamers were stored and

unused during 2013 and 2014 and, therefore, any benefit retained by Dynomax was nominal.

(Dkt. No. 51, p. 4.)  Additionally, Dynomax believes Concur cannot prove its claim of unjust

enrichment without an expert to testify as to the value of the slide reamers.  (*Id.* at 4.)  Concur

has not designated a damages expert and the deadline to designate experts in this case expired on

December 18, 2015.  (*Id.*)

Absent an enforceable contract, a plaintiff may recover under the equitable doctrine of

unjust enrichment.  *Jeffs v. Stubbs*, 970 P.2d 1234, 1245 (Utah 1996) ("Unjust enrichment law

developed to remedy injustice when other areas of the law could not.").  To establish a claim of

unjust enrichment, a plaintiff must establish:

> '(1) a benefit conferred on one person by another; (2) an appreciation or
> knowledge by the conferee of the benefit; and (3) the acceptance or retention by
> the conferee of the benefit under such circumstances as to make it inequitable for
> the conferee to retain the benefit without payment of its value.'

*Espinoza v. Gold Cross Servs., Inc.*, 2010 UT App 151, ¶ 10, 234 P.3d 156 (citations omitted).

The measure of damages for unjust enrichment is the "reasonable value of the services provided

to the defendant."  *Emergency Physicians Integrated Care v. Salt Lake Cnty.*, 2007 UT 72, ¶ 10,

167 P.3d 1080.  "[T]he court should . . . focus on the defendant's gain when assessing damages

for an unjust enrichment claim . . . not the detriment incurred by the plaintiff."  *Jones v. Mackey*

*Price Thompson & Ostler*, 2015 UT 60, ¶¶ 56–57, 355 P.3d 1000 (internal quotation marks and

citations omitted).

 Central to the parties' motions is whether or not Dynomax unjustly received a benefit

without compensating Concur.  Dynomax contends that once Dynomax learned Duradril had

failed to transfer its assets unencumbered, Dynomax removed the disputed slide reamers from its

inventory circulation and stored them until the Texas litigation concluded.  (Dkt. No. 65, p. iii.)

Dynomax concedes that some revenue was generated from Concur's slide reamers while

Dynomax removed its slide reamers from circulation.  However, Dynomax claims that "[t]he

gross amount of the rentals from the time that Concur claims 'unlawful' possession began

(December 2013) was $4,342.50."  (Dkt. No. 65, p. iii.)  Conversely, Concur argues that

Dynomax's interrogatory responses and Dynomax's invoices demonstrate that Dynomax rented

Concur's slide reamers to various drilling sites throughout 2013 and 2014.  (Dkt. No. 65, p. xx, ¶

15; Dkt. No. 52, p. 5, ¶ 10.)  Concur contends that Dynomax generated "$101,922.00 in rental

revenue from the slide reamers and an additional $476,595.00 in additional revenue related to these rentals." (Dkt. No. 59, Ex. G.)

The Court reviewed Dynomax's invoices and compared the slide reamer serial numbers listed in the schedules accompanying the Concur-Duradril Master Lease to the slide reamer serial numbers listed on Dynomax's invoices. (*Compare* Dkt. No. 51, Ex. 4, *with* Dkt. No. 59, Ex. F, Bates Nos. DYN007136–DYN007218.)

| Serial Number Master Lease Schedule | Serial Number Listed on Dynomax's Invoices | Invoice Number | Rental Dates | Rental Value |
|---|---|---|---|---|
| DMSR7007 | 57007 | I130244 | 10/15/13-10/21/2013 | $1,295.00 |
| DMSR7008 | None | | | |
| DM9052-04 | None | | | |
| DM9052-03 | None | | | |
| DM9052-05 | None | | | |
| DM9052-07 | None | | | |
| DM9332-01 | None | | | |
| DM9332-02 | None | | | |
| DM9332-03 | None | | | |
| DM9052-01 | None | | | |
| DM9052-02 | None | | | |
| DM9063-01 | None | | | |
| DM9063-02 | None | | | |
| DM9063-03 | None | | | |
| DM9063-06 | None | | | |
| DM9063-08 | None | | | |
| DMSR8025 | None | | | |
| DM9331-01 | None | | | |
| DM9331-02 | None | | | |
| DM9331-03 | None | | | |
| DDSR57-001 | 57001H | I140318 | | $832.50 |
| DDSR57-002 | None | | | |
| DDSR57-003 | None | | | |
| DDSR58-004-NM | None | | | |
| DDSR58-005-NM | 580005 | I130122 | 08/07/2013-08/17/2013 | $2,035.00 |
| | 580005 | I140152 | 02/15/2014-02/19/2014 | $832.50 |
| | DDSR58005 | I140078 | | $925.00 |
| | 580005 | I140039 | | $832.50 |
| DDSR58-006-NM | None | | | |

| DDSR58-007-NM | 580007 | I130117 | 08/6/2013-08/7/2013 | $925.00 |
|---|---|---|---|---|
| | 580007 | I130243 | 10/6/2013-10/8/2013 | $925.00 |
| DDSR58-008-NM | 580008 | I130115 | 07/15/2013-07/18/2013 | $800.00 |
| DDSR57-004-NM | 570004 | I130128 | 08/5/2013-08/9/2013 | $925.00 |
| DDSR58-088-NM | None | | | |
| | | | **Total Rental Income:** | $10,327.50 |

The Court's review highlights a material dispute of fact in this case. The Court expresses serious doubt that Dynomax used Concur's slide reamers to the extent Concur claims. Indeed, even a liberal reading of Dynomax's invoices does not reveal Dynomax received $101,922.00 in rental income from the slide reamers matching Concur's serial numbers. Similarly, it does not appear that Dynomax is correct in that Dynomax received only $4,342.50 in rental income from Concur's slide reamers. However, at this stage in the litigation, the Court cannot say that no reasonable jury could find Dynomax liable to Concur under a theory of unjust enrichment. *See Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1377 (10th Cir. 1988) ("[T]he trial judge must deny motions for summary judgment when reasonable jurors might disagree . . ."). Concur has proffered some evidence that the slide reamers were used by Dynomax throughout 2013 and 2014 without compensating Concur. Therefore, Concur could sustain a claim for relief under a theory of unjust enrichment.

Moreover, Concur's unjust enrichment claim does not fail because Concur has failed to designate a damages expert. There are non-expert sources of evidence on which a jury could value the benefit, if any, retained by Dynomax. For example, if Dynomax continued to profit from Concur's slide reamers throughout 2013 and 2014, the rental income received by Dynomax could serve as evidence of the benefit retained unjustly by Dynomax. Indeed, the measure of

damages in a claim of unjust enrichment is the benefit Dynomax received while failing to compensate Concur.  *See Jones*, 2015 UT 60, ¶¶ 56–57.

Accordingly, the parties' Motions for Summary Judgment as to Concur's unjust enrichment claim are denied.

## C. Conversion

Concur and Dynomax believe they are each entitled to summary judgment on Concur's conversion claim.  Concur alleges that Dynomax converted Concur's property by failing to return Concur's slide reamers, despite Concur's insistence that Dynomax either (1) assume Duradril's obligations under the Master Lease or (2) make Concur's equipment available for repossession.  (Dkt. No. 59, p. 24.)  Dynomax counters that no conversion occurred because the Texas preliminary injunction prohibited Dynomax from transferring Concur's equipment during the Texas litigation.  (Dkt. No. 51, p. 4.)

"'A conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.'"  *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 30, 305 P.3d 196 (quoting *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 1999 UT 13, ¶ 20, 974 P.2d 288).  "Whether the facts establish the elements of conversion is a question of law . . ."  *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 10, 243 P.3d 508.

Importantly, a claim of conversion cannot proceed if the defendant has lawful justification for interfering with alleged converted property.  For example, compliance with a statute may serve as a source of lawful justification for withholding property from another.  *See Rand v. KOA Campgrounds*, 2014 UT App 246, ¶¶ 12, 16, 338 P.3d 222 (affirming the trial court's finding that lawful justification existed based on the defendant's compliance with Utah

code).  Similarly, compliance with a court order may justify depriving another possession of their

property.  *See, e.g.*, *Kieffer v. Tundra Storage LLC*, Civ. No. 14-3192, 2016 WL 199411, at *6

(D. Minn. Jan. 15, 2016) ("Because the . . . Defendants were acting in compliance with a court

order, they can hardly be considered to have acted 'without lawful justification.'" (citations

omitted)); *Heubner v. Alliance Fund Servs., Inc.*, No. Civ. A. 98-243, 1999 WL 314168, at *5

(D.N.J. May 3, 1999) ("[I]t is widely recognized that when a taking is authorized or directed by a

court order, conversion will not result." (citing cases)).  Indeed, a party is "privileged to commit

acts which would otherwise be . . . a conversion when he [or she] acts pursuant to a court order

which is valid or fair on its face."  Restatement (Second) of Torts § 266 (1965).

 The Court finds that Concur has failed to demonstrate facts that give rise to a claim of

conversion as a matter of law.  Central to the parties' motions is whether Dynomax was justified

in withholding Concur's slide reamers.  There is no dispute that Dynomax knew as early as July

16, 2013, that Duradril had failed to transfer its assets to Dynomax free and clear of the Concur-

Duradril Master Lease.  (Dkt. No. 65, xvi, ¶ 6.)  Additionally, there is no dispute that Concur

asked Dynomax to assume Duradril's obligations under the Master Lease or "[a]rrange for the

collection of the assets by Concur."  (Livingstone Dep. at Ex. 10; Turley Dec. at Ex. 3.)

However, the Texas preliminary injunction plainly prohibited Dynomax from remitting Concur's

equipment until the Texas litigation had concluded.

 Dynomax believed that the APA allowed Dynomax to take Duradril's assets free and

clear of all encumbrances.  (*See* Livingstone Dep. 40:9–17 ("Q: And in order for [Dynomax to

take Duradril's assets free and clear], Greg Ward was supposed to pay off Concur. That was your

deal? A. That was my - - yes.").)  Conversely, Greg Ward testified that the terms of the APA

required Dynomax to satisfy Duradril's obligations to Concur.  (*See* Ward Dep., 30:156-20,

("Mr. Livingstone was going to ascribe values to the assets. And he was going to ensure that there was enough money left over that would take care of the creditors and that Diversified and Concur would be for the account of DynoMax to take care of.").)  The purpose of the Texas litigation was to determine the enforceability of the APA and, more specifically, to determine who had the right to possess the equipment allegedly purchased by Dynomax.  Consistent with the property dispute between Dynomax and Duradril, the Texas court entered a preliminary injunction prohibiting Dynomax from "transferring, conveying, pledging, encumbering, or selling . . . [the disputed assets] except in the ordinary course of business."  (Dkt. No. 58, Ex. B.)  Furthermore, the Texas court retained jurisdiction over the disputed assets for the duration of the Texas litigation.  (*Id.* (stating, "The Court retains jurisdiction over the Assets").)

Concur argues that despite the Texas court's restrictions, Dynomax could have returned Concur's slide reamers "in the ordinary course of business."  (Dkt. No. 59, p. 23.)  The Court disagrees.  The Texas court did not define "ordinary course of business" for the purposes of the preliminary injunction.  However, it would be nonsensical for an injunction governing a property dispute to allow one party to transfer assets currently disputed in litigation to a third-party claiming an adverse property interest to one or more of the parties.  The purpose of the Texas litigation was to determine the enforceability of the APA and to determine whether Dynomax received Concur's slide reamers free and clear of the Concur-Duradril Master Lease.

Although unnecessary to the Court's findings, the Court also finds it persuasive that it appears Dynomax acted consistent with the Texas preliminary injunction.  Although the extent to which Dynomax ceased using Concur's equipment is in dispute, the record demonstrates that Dynomax attempted to remove Concur's equipment from its inventory while the Texas litigation was pending.  *See supra*. Part B.  Furthermore, as soon as the Texas litigation concluded

Dynomax offered to make Concur's slide reamers available for repossession.  (Dkt. No. 52, Ex. C.)

The Court finds that Concur has failed to demonstrate facts that give rise to a claim of conversion.  The Texas preliminary injunction prohibited Dynomax from transferring the disputed slide reamers until the conclusion of the Texas litigation.  Accordingly, Concur's Motion for Summary Judgment as to its claim of conversion is denied and Dynomax's Motion for Summary Judgment as to Concur's claim of conversion is granted.

**CONCLUSION**

Dynomax's Motion for Summary Judgement is GRANTED IN PART and DENIED IN PART.  Dynomax is entitled to summary judgment on Concur's conversion claim.  Concur's Motion for Summary Judgment as to Dynomax is DENIED.

Dated this 5th day of May, 2016.

BY THE COURT:

Dee Benson
United States District Judge